IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| BAXTER BAILEY & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 14-3012 |
| | ) | |
| POWERS & STINSON, INC. and DONALD McKNATT, | ) | |
| | ) | |
| Defendants. | ) | |

JURY INSTRUCTIONS

Ladies and gentlemen, it is now my duty to instruct you on the law that applies to this case. You must follow the law as I state it to you, whether you agree with the law or not. As jurors, it is your exclusive duty to decide all questions of fact submitted to you and for that purpose to determine the effect and value of the evidence.

You must not be influenced by sympathy, prejudice or passion. You are not to single out any particular part of these instructions and ignore the rest, but you are to consider all of the Court's instructions as a whole and regard each in the light of all of the others.

You should not assume from anything I may have said or done that I have any opinion about any of the issues in this case.

1

Except for my instructions to you on the law, you should disregard anything I may have said or done in arriving at your own decision about the facts.

Let me outline for you the parts of the instructions so that you can follow them more easily. First, I will describe the stipulated facts and the contentions of the parties. Second, I will instruct you as to the burden of proof and on which party the law places that burden as to each issue in the case, and I will give you some rules to help you as you consider the evidence. Third, I will discuss the law to apply in determining the legal issues as to liability. Fourth, I will tell you the law of damages. Finally, I will explain to you the form of your verdict and the process of your deliberations.

## CONTENTIONS OF THE PARTIES

### Stipulated Facts

Before the trial of this case, the parties agreed to the truth of certain facts. The Plaintiff and the Defendants have entered into stipulations in which they have agreed that the stipulated facts could be taken as true without either party presenting further proof on the matter. This procedure is often followed to save time in establishing facts that are undisputed.

Facts stipulated by the parties in this case include:

1.   Plaintiff is a commercial collections company.

2.   Meredith Reesor registered the domain name "bbcollects.com" on August 13, 2007.

3.   Plaintiff began doing business on July 29, 2009.

4.   Plaintiff's clients are transportation providers, mainly trucking companies.

5.   Plaintiff chose the domain "bbcollects.com" because it contains the first letters of the first two words in its name ("Baxter Bailey") and "collects," which is the service it provides.

6.   Defendant Donald McKnatt registered the domain "bbcollect.com" on May 13, 2011.

7.   When the site was active and someone reached "bbcollect.com" it would re-direct him or her to Defendant Powers & Stinson, Inc.'s website at "www.powers-stinson.com."

## Plaintiff's Contentions

The Plaintiff contends that the Defendants have used the designation "bbcollect.com" to induce customers to use Defendants' services instead of Plaintiff's.  Donald McKnatt purchased domains to use to make his own company look better and that he would have sold the websites with the company.

The Plaintiff alleges that the Defendants' unlawful acts were intended to attract clients and customers who were attempting to use the Plaintiff's services but for a simple typo in the web search.  The Defendants have attempted to profit from the website by attempting to sell the "bbcollect.com" domain name to the Plaintiff.

The Plaintiff contends that the Defendants had no legitimate reason for using the "bbcollect.com" domain and website other than to direct clients to the Powers & Stinson website when a customer was attempting to go to Baxter Bailey's website.

**Defendant's Contentions**

The Defendants contend that Powers & Stinson had a legitimate purpose for using a domain name that turned out to be similar to the Plaintiff's, namely, to direct visitors to the Powers & Stinson website.  The Powers & Stinson website did not mention "bbcollects.com" or Baxter Bailey.  It did not contain any information that could cause potential clients to believe that the Plaintiff and Powers & Stinson were related entities.

The Defendants further contend that "bbcollects.com" is not a distinctive mark, in that Baxter Bailey cannot demonstrate that the mark has obtained secondary meaning.  Because "bbcollects.com" is merely descriptive and not a distinctive mark, the Defendants have not violated the provisions of the Anticybersquatting Consumer Protection Act ("ACPA").

The Defendants further content that Powers & Stinson made "bbcollect.com" inactive shortly after being notified of the Plaintiff's objection to its use, minimizing the harm, if any, to the Plaintiff.


**BURDEN OF PROOF AND CONSIDERATION OF EVIDENCE**

In this case the Plaintiff, Baxter Bailey & Associates, has the burden of proving each and every element of its claims by a preponderance of the evidence.  If you find that any one of the elements of its claims has not been proven by a preponderance of

5

the evidence, you must return a verdict for Defendants on that claim.

The term "preponderance of the evidence" means that amount of evidence that causes you to conclude that an allegation is probably true.  To prove an allegation by the preponderance of the evidence a party must convince you that the allegation is more likely true than not true.  If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence, and the party having the duty of proving that issue has failed.  You must consider all of the evidence on each issue.

The preponderance of the evidence is not decided in favor of the side that brings the greater number of witnesses or presents the greater quantity of evidence.  You should make your decision based on which witness or witnesses, and which evidence, appears to you the most accurate and trustworthy.

As members of the jury you are the judges of the facts in this lawsuit.  For you to determine what the true facts are, you are called upon to weigh the testimony of each witness who has appeared before you and to give the testimony of each witness the weight, faith, credit and value to which you think it is entitled.

You will note the manner and demeanor of the witness while on the stand.  You must consider whether the witness impresses

6

you as one who is telling the truth or one who is telling a
falsehood and whether or not the witness is a frank or a candid
witness.  You will consider the reasonableness or
unreasonableness of the testimony of the witness; the
opportunity or lack of opportunity the witness had to know the
facts about which he or she testifies; the intelligence or lack
of intelligence of the witness; whether the witness seemed to
have a good memory; the interest of the witness in the result of
the lawsuit, if any; and, finally, the relationship of the
witness to any of the parties in the lawsuit, if any.

These are the rules that should guide you, along with your
common judgment, your common experience and the common
observations you have made in your various walks of life in
weighing the testimony of the witnesses who have appeared before
you in this case.

If there is a conflict in the testimony of the witnesses,
it is your duty to reconcile that conflict if you can, because
the law presumes that every witness has attempted to and has
testified to the truth.  If, however, there is a conflict that
you are not able to reconcile in accord with these instructions,
it is up to you absolutely to determine which of the witnesses
you believe have testified to the truth and which you believe
have testified to a falsehood.

7

Differences between witnesses' testimony does not necessarily mean that a witness should be disbelieved. Sometimes when two people observe an event they will see or hear it differently.  Sometimes a witness may have an innocent lapse of memory.  Witnesses may testify honestly but simply may be wrong about what they thought they saw or remember.  You should consider whether a discrepancy relates to an important fact or to an unimportant detail.

Remember, the greater weight or preponderance of the evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or a particular state of facts.  Rather, it depends on the weight, credit and value of the total evidence on either side of the issue, and of this you are the exclusive judges.

There are two kinds of evidence, direct and circumstantial. Direct evidence is testimony by a witness about what that witness personally heard or saw or did.  Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which one can find another fact.  You may consider both direct and circumstantial evidence in deciding this case.  The law permits you to give equal weight to both, but it is up to you to decide how much weight to give to any evidence.

8

You must not consider as evidence any statement of counsel made during the trial.  If, however, facts are admitted by counsel, you may regard those facts as true.

You must never speculate to be true any insinuation suggested by a question asked of a witness.  The question is not evidence, and it may be considered only insofar as it supplies meaning to the answer.

As to any questions to which an objection was sustained, you must not speculate as to what the answer might have been or as to the reason for the objection, and you must assume that the answer would be of no value to you in your deliberations.

From time to time the Court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, insofar as it was practicable, out of your hearing.  You have no concern with the reasons for any such rulings and you are not to draw any inferences from them.

You must not consider for any purpose any offer of evidence that was rejected or any evidence that was stricken by the Court.  Such matters are to be treated by you as though you had never known them.

## LAW

It is my duty to tell you what the law is.  If anyone has told you that the law is different from what I tell you it is, you must take the law as I give it to you, whether you agree with the law or not.  That is my duty, but it is your duty and yours alone to determine what the facts are, and after you have determined what the facts are, to apply the law as I give it to you free from any bias, prejudice or sympathy one way or the other.

### Lanham Act

The Plaintiff's first claim for is dilution under the Lanham Act.  A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and to control their product's reputation.

The Plaintiff claims that the Defendants diluted the Plaintiff's unregistered trademark, "www.bbcollects.com," by registering and using the web domain name "www.bbcollect.com."

To succeed, the Plaintiff must prove by a preponderance of the evidence that: (1) the Plaintiff's trademark is famous and distinctive, either inherently or through acquired distinctiveness; (2) the Defendants' use of their own mark began after the Plaintiff's trademark became famous; (3) the Defendants' use of their own mark is likely to cause dilution by blurring of the Plaintiff's trademark; and (4) the Defendants' conduct was willful.

### 1.    Famous and Distinctive

A claimed trademark is famous if it is widely recognized by the general consuming public of the United States as the designation of the source of the owner's goods.

In considering whether the Plaintiff's trademark is "famous," you may consider all relevant factors, including the following:

(1) The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by the Plaintiff or third parties;

11

(2) The amount, volume, and geographic extent of sales or goods or services under the Plaintiff's trademark;

(3) The extent of actual recognition of the Plaintiff's trademark; and

(4) Whether the Plaintiff's trademark was registered on the Principal Register of the United States Patent and Trademark Office.

### 2.    Timing

The Plaintiff must show that the Defendants' use of its own mark began <u>after</u> the Plaintiff's trademark became famous.

### 3.    Likely to Cause Dilution

Likelihood of dilution by blurring occurs when the similarity between the Defendants' mark and the Plaintiff's famous trademark impairs the distinctiveness of the famous trademark.  In determining whether the Defendants' mark is likely to blur the distinctiveness of the Plaintiff's trademark you may consider all relevant factors, including the following:

12

(1) The degree of similarity between the Defendants' mark and the Plaintiff's trademark;

(2) The degree of inherent or acquired distinctiveness of the Plaintiff's trademark;

(3) The extent to which the Plaintiff is engaging in substantially exclusive use of its trademark;

(4) The degree of recognition of the Plaintiff's trademark;

(5) Whether the Defendants intended to create an association with the famous mark;

(6) Any actual association between the Defendants' trademark and the Plaintiff's trademark.

### 4.   Damages

If you find that the Plaintiff has proved its trademark dilution claim by a preponderance of the evidence, then you must determine whether the Defendants' conduct was willful.

A defendant commits a willful violation of a trademark when that defendant knowingly and purposefully capitalized on and appropriated for itself the goodwill of a plaintiff.

If you find that the Defendants' conduct was willful, then you must determine the Plaintiff's actual damages.  The Plaintiff has the burden of proving actual damages by a preponderance of the evidence.  Actual damages means the amount of money that will reasonably and fairly compensate the

Plaintiff for any injury you find caused by the Defendant's
infringement.

In determining actual damages, you should consider the
following in determining actual damages:

(1) The injury to the Plaintiff's reputation;

(2) The injury to the Plaintiff's goodwill;

(3) The lost profits that the Plaintiff would have earned but
for the Defendants' infringement;

(4) The expense of preventing customers from being deceived; and

(5) The cost of future corrective advertising reasonably
required to correct any public confusion caused by the
infringement.

In addition to actual damages, the Plaintiff is entitled to
any profits earned by the Defendants that are attributable to
the infringement, which the Plaintiff proves by a preponderance
of the evidence.  You may not, however, include in any award of
profits any amount that you took into account in determining
actual damages.

**Anticybersquatting Consumer Protection Act**

The Plaintiff's second claim is for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA").

To succeed, the Plaintiff must prove by a preponderance of the evidence that: (1) the Defendants had a bad-faith intent to profit from the Plaintiff's mark, and (2) the Defendants registered, trafficked in, or used a domain name that is either:

- (A) Identical or confusingly similar to a distinctive mark OR

- (B) Identical or confusingly similar or dilutive of a famous mark.


**1.    Bad Faith**

In determining whether the Defendants had a bad-faith intent to profit from the Plaintiff's mark, you may consider the following nine factors. No single factor controls, and the Plaintiff is not required to prove that all, or even most, of the factors are present in this case. You may also consider factors other than these nine to determine the Defendants' intent:

(1) Whether the Defendants have trademark or other intellectual property rights in the domain name;

(2) The extent to which the Defendants' domain name consists of their legal names or a name that is otherwise commonly used to identify them;

(3) The extent of the Defendants' prior use, if any, of their domain name in connection with the bona fide offering of any goods or services;

(4) The extent to which the Defendants used the Plaintiff's mark noncommercially or as a "fair use" in a site accessible under the domain name.  "Fair use" is the good-faith descriptive use by the Defendants of a name or term only to describe its goods or services, and not a mark;

(5) Whether the Defendants intended to divert consumers from the Plaintiff's online location to a site that is accessible under the Defendants' domain name and could harm the goodwill represented by the Plaintiff's trademark. A site could harm the goodwill represented by the Plaintiff's trademark if it (a) is for commercial gain, (b) intends to tarnish or disparage the Plaintiff's trademark, or (c) creates a likelihood of confusion

16

as to the source, sponsorship, affiliation, or endorsement of the site;

(6) Whether the Defendants offered to transfer, sell, or otherwise assign their domain name to the Plaintiff or any other third party for financial gain without using, or having an intent to use, the Defendants' domain name in the bona fide offering of any goods or services, or whether the Defendants' prior conduct indicates a pattern of such conduct;

(7) Whether the Defendants provided material and misleading false contact information when applying for registration of their domain name, whether the Defendants intentionally failed to maintain accurate contact information, or whether the Defendants' prior conduct indicates a pattern of such conduct;

(8) Whether the Defendants registered or acquired multiple domain names that they know are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous trademarks of others that are famous at the time of registration of such domain names, without regard to the goods of the parties; and

(9) The extent to which the Plaintiff's mark is or is not
distinctive.

### 2A.    Identical or Confusingly Similar to a Distinctive Mark

The Plaintiff's mark is not registered with the United
States Patent and Trademark Office.  Unregistered marks can be
distinctive if they are either inherently distinctive, or
descriptive but with secondary meaning.  The Court has
previously determined that Plaintiff's mark is not inherently
distinctive.  Therefore, for its mark to be distinctive, the
Plaintiff must prove, by a preponderance of the evidence, that
its mark has acquired recognition among prospective customers,
called "secondary meaning."

Secondary meaning arises when, in the minds of the
public, the primary significance of a mark is to identify the
source of the product or service being offered, as opposed to
the characteristics of the service being offered.  One example
is that consumers recognize "Soft Soap" as a product from a
particular manufacturer of hand soap.

In determining whether "bbcollects.com" has acquired secondary meaning, you may consider following factors: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) established place in the market; and (6) proof of intentional copying.

For purposes of the ACPA, a domain name is identical or confusingly similar to a mark if consumers might think that the domain name is used, approved, or permitted by the mark holder.

### 2B.   Identical or Confusingly Similar or Dilutive of a Famous Mark

Once again, in considering whether the Plaintiff's trademark is "famous," you may consider all relevant factors, including the following:

(1) The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by the Plaintiff or third parties;

(2) The amount, volume, and geographic extent of sales or goods or services under the Plaintiff's trademark;

19

(3) The extent of actual recognition of the Plaintiff's trademark; and

(4) Whether the Plaintiff's trademark was registered on the Principal Register of the United States Patent and Trademark Office.

        For purposes of the ACPA, a domain name is identical or confusingly similar to a mark if consumers might think that the domain name is used, approved, or permitted by the mark holder.

        Dilution occurs when the similarity between the Defendants' trademark and the Plaintiff's famous trademark impairs the distinctiveness of the famous trademark.  Once again, in determining whether the Defendants' trademark is likely to blur the distinctiveness of the Plaintiff's trademark, you may consider all relevant factors, including the following:

(1) The degree of similarity between the Defendants' trademark and the Plaintiff's trademark;

(2) The degree of inherent or acquired distinctiveness of the Plaintiff's trademark;

(3) The extent to which the Plaintiff is engaging in substantially exclusive use of the trademark;

(4) The degree of recognition of the Plaintiff's trademark;

(5) Whether the Defendants intended to create an association with the famous mark; and

(6) Any actual association between the Defendants' trademark and the Plaintiff's trademark.

### 3.    Damages

If you find that the Plaintiff has proved its ACPA claim by a preponderance of the evidence, you may award the Plaintiff damages in an amount between $1,000.00 and $100,000.00 that you consider just.  There is no fixed formula for how much or how little in the way of damages you should award.  In arriving at a damages award, however, you may consider the following non-exhaustive factors:

(1) how many instances of infringement occurred;

(2) the Defendants' intent;

(3) whether the Defendants earned any profits as a result of the infringement;

(4) whether the Plaintiff lost any revenue as a result of the infringement;

(5) the conduct of the Plaintiff and the Defendants; and

(6) the effect, if any, of deterrence.


## VERDICT AND DELIBERATIONS


After you retire to the jury room, you will select a foreperson to preside over your deliberations and be your spokesperson here in court.


Some of you have taken notes during the trial. Remember your notes are to aid you in recalling the testimony in the case. Your notes are not evidence in the case. You must rely on your memory -- on your recollection -- in determining the facts in this case.

If you did not take notes, you should rely upon your own memory of what was said and not be influenced by the notes of other jurors.


Do not begin to deliberate and do not discuss the case at any time unless all eight of you are present together in the jury room. If someone leaves the jury room for any reason, do not talk about the case while that person is gone.

22

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest

beliefs solely because others think differently or merely to get the case over with.

Remember, that in a very real way you are judges -- judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for your convenience. The verdict form will be placed in a folder and handed to you by the Court Security Officer.  At any time that you are not deliberating (i.e., when at lunch or during a break in deliberations), the folder and verdict form should be delivered to the Court Security Officer who will deliver it to the courtroom clerk for safekeeping.

[EXPLAIN VERDICT]

When you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

24

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the Court Security Officer, who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

I will have a copy of these instructions and the exhibits in the case sent back to you in the jury room.

[ANY JURY ALTERNATES NOT ALREADY EXCUSED,

SHOULD BE EXCUSED AT THIS TIME].

You may now retire to begin your deliberations.